Case number 08-1065 State of New Jersey Petitioner v. Environmental Protection Agency Ms. Morelli for the Petitioner, Ms. Brown for the Respondent, Ms. Broome for the Intervenor I'm just going to switch my light real quick to see if I can fix this. Hold on. Apologies for that. Lisa Morelli for Petitioner, State of New Jersey. I'd like to reserve three minutes of time for rebuttal. May it please the Court. EPA's revised Reasonable Possibility record-keeping rule remains defective and should be set aside. It is arbitrary and capricious because EPA did not do enough to address the enforceability issues identified by this Court in New York v. EPA by not requiring sources to retain and report pre-change emission calculations. In rejecting the original rule, this Court took issue with the fact that sources had no obligation to retain records, let alone report those records to or projections to permitting authorities. The revised rule with its trust us applicability scheme does not correct this defect. EPA's rule forces authorities to police NSR using post-construction monitoring data. This is not pre-construction review. In contrast to a straightforward show us your work rule, the Reasonable Possibility rule gives sources unfettered discretion. Ms. Morelli, with apologies for the interruption, I want to start with standing, if I could. And I also will apologize in advance. This is going to be something of a long question, but standing wasn't briefed as extensively as some of the merits questions. And so I'm going to share where I think the case is on standing, and then I want you to have every opportunity to tell me where I've gone off track, if you think I have. Clapper says that the standard for standing is that the injury has to be certainly impending. In a footnote, it says that the substantial risk standard may survive. Possibly that substantial risk standard is lower than certainly impending, and Susan B. Anthony case uses the substantial risk standard. Maybe that's confined to the pre-enforcement cases. Maybe not. If it's not, and if it survives, and if it were to apply here, you still can't rely on an attenuated chain of inferences necessary to find harm. That's from Clapper. You can't rely on speculation about the unfettered choices made by independent actors, not before the court. That's from Clapper. You instead have to plead and prove concrete facts, showing your actual harm. Sorry, showing the actual action by the defendant has caused a substantial risk of harm to you. Now, in Mass V. EPA, Massachusetts was able to point to specific cars. It was easy. It was all cars, but they could point to specific cars and say these cars are emitting a pollutant, and that pollutant is making a specific part of our land, our coastline, recede. So the specific cars were causing our specific coastline to recede. And the science said that that was happening at the moment, and the science said that that was also going to continue happening. Here, by contrast, EPA has already banned the pollution that you think should be banned. You say you're injured because EPA has not made it hard enough for a source to evade the EPA's standard. But you don't point to any source that will certainly, to use Clapper's words, evade the ban or that is even likely to evade the ban. I didn't see any specific sources in all the briefing in this case that you say this source is going to cheat and evade the ban. So I don't think any source's evasion is certainly impending, and I don't think there's a substantial risk that any source will evade the ban. And your theory of standing, if I understand it, instead goes something like this. It involves, I think, up to seven assumptions. You assume that some unspecified source will say there's no reasonable possibility of a significant emission. You assume the EPA will not catch them when they cheat. You assume that no other authorities will catch them. You assume the EPA would not have granted them a permit for the significant emission. You assume that the extra pollution will reach New Jersey. You assume that someone in New Jersey will be exposed to the extra pollution, and you assume that that person will be injured by the exposure. I think that's a lot of assumptions. It seems like an attenuated chain of inferences necessary to find harm, to again use Clapper's words, which you can't do. And it also seems like, in Clapper's words, speculation about the unfettered choices made by independent actors not before the court, which again Clapper says you can't do. I know you disagree with that, and I want you to be able to pick it apart piece by piece and tell me everything you think I got wrong. So I'll try to address the questions that you raised, your concerns. With any type of rule or statute that requires an entity to take certain actions, you're never going to be able to predict in advance for sure whether that source is going to comply or not. So there's always going to be some element of what the source is going to do. You try to ensure they will comply by enabling one, as we say here, permitting authorities to be able to check what the source is doing, so there is some assurance of compliance. As far as attenuated circumstances, and this is in one of the declarations we submitted, there's no question that most of New Jersey's air pollution comes from upwind, out-of-state sources, something on the order of 70%. So without question, we are impacted by what facilities upwind and out-of-state in New Jersey are doing. And there are a lot of those facilities that are upwind of us. So for all these facilities, if the enforcement ability of their own permitting officials are hampered to the extent that they can't even find out if the source has undertaken a modification in the first instance, then yes, that will have a direct impact on New Jersey because those sources that are undertaking these changes are not submitting the information to permitting authorities that they need to evaluate NSR compliance, and they're not able to ensure that NSR requirements are met, which includes installing pollution controls if required. Thank you for being patient with my question and for the thorough answer. I'm grateful for it. Along the lines of standing and injury and redressability, let's assume that there is a source in Pennsylvania, a specific plant, and that plant is cheating and polluting and New Jersey is injured by it. What can New Jersey do if they find out that cheating is going on? What can New Jersey do to that plant that's not in New Jersey? So New Jersey has the ability to bring a citizen suit action under the Clean Air Act, and they can sue the plant. In fact, we have done that. We have done that with multiple power plants, in fact, located in Pennsylvania, as well as other upwind states in the Midwest. So they have that option. They could petition EPA under 126 if they believed that, or I shouldn't say believe, they would need evidence to show that emissions from that plant were resulting in an exceedance of the National Ambient Air Quality Standards for a pollutant that was affecting New Jersey's air quality. So those are the avenues that are generally available for out-of-state sources. I want to turn and just brief a little bit to the merits now. I'm concerned that almost everything you asked the EPA to do in your comments after they proposed the 2007 rule, I'm concerned that EPA may have done either everything or at least almost everything that you asked them to do. So I looked at – I've got your comments here. And with regards to the percentage increase trigger approach, I'm at JA50. It has – that's the approach that's at issue on this case now. It talks about demand growth in almost every paragraph. The first paragraph just summarizes what EPA did, and then the second paragraph begins to criticize it. I'm at JA51 now. It says that the EPA's approach is bad because it won't address demand growth. And then the third paragraph there says it's bad because sources can exclude product demand growth, and it will be often difficult to separate demand growth from other emissions. And then it continues to talk about increasing demand growth. It talks about the New York case, and it says that EPA quotes the New York case. Now I'm on JA53. It quotes the New York case, but it didn't address the New York case because it does not address this problem, and the problem there is referring to, again, the inclusion of demand growth – or the exclusion, rather, of demand growth. And the next paragraph says a source wouldn't trigger recordkeeping by excluding demand growth, and it's often difficult to find demand growth. And the next paragraph says EPA concedes no records will be kept. With regard to the next paragraph, this deficiency, it says no records will be kept, and that could be solved by one of two ways. And the next paragraph, final paragraph, gives the two ways that the problem, according to you, could be fixed. Now the first option you give, EPA didn't choose, but the second option you give says EPA could fix this problem, the problem that I've been talking about this whole time and that is mentioned in all of your comments. If EPA subjected facilities that choose to exclude demand growth emissions to recordkeeping monitoring and reporting requirements to ensure that – and now I'm on JA55 – to ensure that permitting agencies and enforcement authorities have sufficient information to hold facilities accountable. Now, EPA did not do exactly that, but what EPA did do is it said that if you're a source and you want to qualify for reasonable possibility, then you still have to keep records. You still have to at least keep your pre-modification records if you're over the 50% threshold, not just when you exclude demand growth, but even when you include demand growth. So a company, say they're at 40% without including the demand growth emissions, but once they include the demand growth emissions, they're at 60% of the significant emissions threshold. In that case, they still have to keep the pre-modification records. So I guess it seems like you got almost everything you wanted. Why are the – is the things that you didn't get, why are they as important as you're making out? And along those lines, there were a lot of states in the original round of litigation. There were a lot of states on your comments. You're the only state left. Is it that the other states were satisfied that EPA did almost everything you wanted EPA to do? Let me address your first question first. We didn't get really the most critical thing that we did want, which was reporting of pre-project emission calculations. And the reason why that's so critical is that information just is not available from any other source. And it brings transparency as well as accountability to the process. The problem that we found throughout NSR litigation – and I personally, on behalf of New Jersey, have been involved in five or six of these NSR enforcement cases – the problem is that permitting authorities don't know that a modification has occurred that might have NSR implications. And they have no way to check that. And in the litigation, when you finally get to that point, which is a very long, drawn-out process and entails – requires a lot of resources, you find that the emission calculations that were done were very sketchy, if they were done at all. And so the importance of requiring reporting is that the source knows that a permitting official is going to review the calculations. And so it really, I think, brings, as I said, some accountability to the process. And I think also in a lot of states, or at least in New Jersey, when you submit information to the permitting authorities, you have to do so under oath, or you have to certify that the information is true and correct to the best of your knowledge. So that's the key piece. That, we believe, is more important than anything. More important than post-construction records, post-construction monitoring, emission records. Because all of that, we can come back and ask the source to provide the additional information. What we can't get up front are the pre-construction emission calculations. And we can't get those records pre-construction. Again, the whole point of the NSR program is to allow permitting authorities to evaluate before construction whether pollution controls are required. And they can't do that if they don't have the calculations in hand. Ms. Morelli, I've taken up all of your time. I'm finished asking your questions. I thank you for your patience, and I especially thank my colleagues for their patience. Of course. I promise not to ask any more. No, no. Never a need for that promise. I want to make sure my colleagues, we'll give you time for rebuttal, Ms. Morelli, but I want to make sure my colleagues don't have further questions for you. If not, we'll hear from the government. Thank you, Ms. Morelli. Thank you, Ms. Brown. Good morning. May it please the court, Laura Brown on behalf of the Environmental Protection Agency. The challenged rule is the product of reasoned decision making, and it should be upheld for three reasons. First, the Clean Air Act does not require sources to keep records, monitor emissions, and report to reviewing authorities when they determine that a modification does not require a new source review permit. But in recognizing the potential value of this information for enforcement, EPA balanced administrative concerns and set an objective bright line test that requires record keeping, reporting, and monitoring for those projects that EPA determines will have a higher probability of actually causing a significant... So before we go too deep into the merits, can I just start you off where Judge Walker started off, which is with standing. And the government didn't make a standing objection here, and at least my experience with the government has been where the government believes there's any standing argument to be made, it usually makes it. And I'm just wondering, can we infer from that that you think that there is standing here? Well, Your Honor, I will note that we did in our brief assert a concern about standing with respect to any injury that is caused by sources within New Jersey because New Jersey has... Actually, I didn't read you to be... That's only sources within New Jersey, so it doesn't deal with upwind sources, but I didn't even read that to be a standing objection. I thought you made that was in the context of your merits argument, but maybe I missed something. Maybe you... No, no, you didn't miss it. You're right. I just thought I would at least point that out, that we do think there is concern with their injury within the state of New Jersey. Do you think New Jersey has standing? Obviously, it's Petitioner's burden to establish that they have standing, and I'm certainly not going to argue with your hypothetical, Judge Walker, that you laid out certain very detailed causes of events that would have to occur. I think Ms. Broom will probably address standing in a much more educated fashion since it was actually raised in her brief. We did determine, our initial assessment was that New Jersey did have standing with respect to out-of-state sources. Okay. Second, for those modifications that do not trigger the record-keeping, monitoring, reporting requirements, EPA explained how other records routinely kept by sources relate it and other reviewing authorities in enforcing new source review. Given EPA's vast experience and expertise in enforcing new source review using these type of records, the explanation should be given deference. Let's assume that, as you argue, that the court must defer. This is an area of EPA expertise. What is the expertise that responds to Petitioner's argument that, as to pre-construction, there are no substitute records? And if those records are not available pre-construction, you heard all the things she said. Why is that a matter to which the court should defer because of the agency's expertise? Well, I would note in the first instance that we do not concede that this information... Would you agree that whether there are pre-construction records required or not is just a fact question? So what EPA has determined, given its expertise and experience in administering the new source review program, is that actually minor new source review permits, which must be applied for prior to construction, could provide states such as New Jersey with the information that it seeks about a proposed modification that does not meet the major new source review record-keeping requirements. Minor sources. What about major sources? Well, so the minor new source review program applies to major sources when they make determinations that a modification is not a major modification under the Clean Air Act, under the new source review program. So major sources can submit minor source new source review applications for those modifications that do not meet the major... But I'm thinking somebody is going to spend $500 million building a new plant. How are minor source records going to provide the information? Well, in that instance, if the source determines that there is not a major modification, it sounds like you're hypothetical if someone is going to build a new plant and that would automatically fall within the major new source review program and would also require a new source review permit as a new source. So you're telling me that council is just wrong? I think council has overstated her concern, or New Jersey, excuse me, has overstated their concern about the lack of available records pre-construction. Actually, New Jersey's reply brief strengthens EPA's point. For instance, New Jersey has adopted regulations that require sources, major sources, that have determined that a modification does not trigger a major new source review to submit to the reviewing authorities either a notice or a permit application describing the proposed modification and any change in emission as a result. So even in New Jersey, when a major source makes the determination that the change or physical project is not a modification that falls within the major new source review program, New Jersey is still getting the information it needs to make a determination of whether there could be a major new source review implication. Does that apply to out-of-state? We're all going to ask you the same question. What about out-of-state sources? So out-of-state sources are under the new source review regulations required to provide notice to states within the air quality region of minor new source review applications and provide the states an opportunity, and the public too, to comment on those minor new source review applications, which are pre-construction. And so New Jersey will have notice of minor new source review permit applications from sources within, for instance, the state of Pennsylvania or other states in the regional air quality. Is there no gap? Is there no delta there in between where there's a modification that doesn't arise to the level that requires reporting, but that also wouldn't come under minor source so that New Jersey is actually not going to know about the modification? I don't think I can say there's no gap. So states have the authority to determine if there are categorized insignificant activities that it determines are exempt from the minor new source review program. And so those are specific activities that states have made a specific determination or types of projects that really could have no, or exempt, would have no influence or impact on the state's air quality and do not require actual pre-construction permit. That is allowed under the statute, but it's going to be, in my understanding, it's pretty rare. So either a source is going to seek a major new source review permit, and if it doesn't, then it sort of falls into the minor new source review bucket, and there will be notification to the reviewing authorities about the type of project that that source is proposing. And I'm just talking about out of state, upwind sources, right? I'm not talking about within New Jersey sources. And you're talking about the same thing you're talking about? No, I am talking about out of state. So there might be a gap. There could be a gap of insignificant projects that a state, for instance, Pennsylvania, determines is exempt from minor new source review. And so that small... But that's even south of minor. It's insignificant. So that's even, according to whatever jurisdictions are reviewing it, even more trivial than minor. Correct. That's correct. You're saying there's no gap between minor and major, such that... I am not aware of any, and based on my discussions with my client, that it is either the permit application will be either, it'll be either a major modification or a minor modification. Or an insignificant activity. So I'm not sure that that's consistent with your brief, but maybe I'm just misunderstanding. The smallest would be completely insignificant. They would have to get a minor permit. No. So there's major new source review, which is for major modifications. And then if a modification is not a major modification, then most likely it is a minor modification. However, there are some projects that a state can exempt from the minor new source review program that are so insignificant. So there's completely insignificant, and then there's the minor modifications. And when that happens, there's some reporting that goes on to the state through the SIPs. Is that... Correct. Okay. And then there's also a modification that has a reasonable possibility of being major. That's next. And then there's a modification that is major. Right. I'm wondering, because I'm still not sure, is there a gap ever between a minor modification that triggers SIP reporting and a reasonable possibility of a major modification? Yes. And how rare is that? So if I'm understanding your question correctly, a determination that a modification is not a major modification but has a higher probability of potentially being a major modification, that falls within the reasonable possibility standard. But what if it's below the reasonable possibility standard but above the minor modification SIP standard? So if it's below the reasonable possibility standard, then in most cases, it needs a minor new source review permit. So I get that, and I'm just trying to figure out what most cases mean. What's the most? Why do you say most? Why is that not all? 99% of cases? 60% of cases? Well, because of the category that could be exempt. Insignificant. Insignificant. Correct. So it either is a major new source review project or a minor new source review project that may or may not be subject to reasonable possibility record keeping. And then there's a third category that's insignificant. So the reasonable possibility standard covers the minor new source review program, but only those that are more likely or potentially likely to trigger major new source review. Insignificant is the smallest of those, in terms of emissions. That is the smallest, which states have just exempted as a project. I'm sorry, Chief Judge. No, no, not at all. Not at all. I think we're asking the same questions and going in the same place. Can I just ask, but I don't want to cut you off, Judge Walker, if you have a... Can I just ask the question in this following way just to make sure I understand the typology? So let's just assume away the insignificant ones so you don't need to caveat your answer, at least for these purposes with respect to the insignificant ones. Put those to one side. Then if, as I understand New Jersey's argument, they're saying that for some, if it's not major, so that we're in reasonable possibility land, there's going to be some projects as to which they receive no notice that it's even happening. Because the reporting part of it is not there. Record keeping might be there, but reporting is not there. And as I understand your response, you're saying, no, that category doesn't really exist, again, putting aside insignificant, because there will be awareness of it by virtue of minor. So that is generally, yes, I think that is generally correct. I am afraid to say 100% that there could not be one specific type of project that I'm just not thinking of sitting right here. But generally, yes, that a state will receive notification of a project that is not a major modification through its minor news source review program. Let me say, if one of us wants to say that in an opinion, where in the JA should we look to find support for that? And you don't have to know the number off the top of your head, but if you could give us a hint. Yeah, so if you, I think it's actually within the regulation, so 40 CFR 51-160-B. That describes what EPA requires of minor news source review programs, as well as within EPA's, the Federal Register associated with the promulgation of this rule, EPA discussed the sufficiency of minor news source review programs as supporting a gap filler. I just would like to clarify, though, that New Jersey might not itself receive notification for every minor news source review permit occurring outside of its jurisdiction. For those jurisdictions that are not within the air quality region, sources are not required, excuse me, the states are not required to provide notice to other states about sources that are making a minor source modification. What if it's a downwind state, though? I can understand if it's a state that's not even within the, you know, the wind column at all. But if it's a downwind state within the way we usually think about downwind states under Homer and all the statutes and regulations that apply to that dynamic, would New Jersey get notice as a downwind state or no? So under the regulation, New Jersey is only required to get notice from those states that are within its air quality region. I, from a practical perspective, I do not know if there are downwind states that are not included within that district, but if it were outside of it, within the outside of that region, but if it were outside of the region, then it would probably not receive it. I see my time is up, but I could just make one final point. You know, what New Jersey seems to seek here is reporting for all modifications or virtually all modifications, no matter how insignificant. And that reporting could actually also impose not only a burden on the regulated community, but also a burden on administrative, excuse me, reviewing authorities, especially those with small staff or that lack resources to review all proposed modifications and ultimately distract them from those modifications that have a higher probability of potentially causing a significant emission increase. And what EPA was doing as part of this rule is assisting reviewing authorities and focusing their attention on those types of projects. Can I ask one question, one more question? Between 2009 and 2019, EPA was, I guess, reconsidering the 2007 rule and then after 10 years of reconsidering it, it decided not to reconsider it. What was that all about? I think that there was perhaps a change in priorities. I don't know that I can speak directly to the decision making that was made on why not to reconsider. That wasn't actually part of this challenge. Thank you, Ms. Brown. As my colleagues have further questions, we'll hear from intervener of council. Ms. Broome. Okay, thank you. I think I'm just unmuted now. May it please the court, I had a presentation, but I guess what I'd like to start with is the fact that in the New York case that gave birth to this rulemaking, the court stated less burdensome requirements may well be appropriate for changes or sources with little likelihood of triggering NSR. And as Judge Williams said in his concurring opinion, EPA need not show that the system chosen will achieve perfect NSR compliance. Perfection is often too costly to be sensible. And I lay that out as a predicate, and I would like to explain. I do a lot of compliance work with big facilities and small facilities. So the way that the program works, and Judge Rogers, to your question earlier, you have major new source review and minor new source review aren't addressed to major and minor sources. They're addressed to projects. And so you get this misnomer because it's called new source review, but it's really maybe should be better called new project review. And this rule is solely concerning existing sources and modifications at existing sources. And so if you have a refinery or an automobile manufacturing plant, there are some projects that will trigger major new source review because they exceed the significance levels. And those go to major NSR. But most projects out of facility trigger minor new source review and get these minor source permits. And that's what the states deal with. And so someone asked earlier if there is a gap there between major and minor. No, there's no gap. Minor goes up to the major source trigger level and then below minor there's this de minimis insignificant stuff and And so an example of that is there a list of exemptions in New Jersey schools. New Jersey Administrative Code 727-26.4 contains a list of exemptions for things like adhesives and sealants that contain less than 20 grams per liter of volatile organic compounds. Very specific things that the state has determined and EPA has approved after a public notice and comment process that those things are insignificant. So I would go back to the state implementation plan, even though one individual exemption and the use of that might not be reviewed, that the fact that there would be an exemption at that level and there aren't a lot of Miss Byrne, the state implementation plans for minor modifications. Do they all require reporting of pre-modification record keeping? No. And they never have. That's, that's the whole problem, according to New Jersey. So that, and that takes me back to my point on perfection. I mean, the fundamental question is, and EPA made this point in their brief, that if you require reporting of absolutely everything, you're going to lose the wheat for the chaff and you're going to miss the projects that you really should be paying attention to. And that, if you have to report, things happen at a major plant every day, they're doing maintenance, they're I'm sorry, I'm not talking about the insignificant modifications, the routine maintenance, but the modifications that are greater than insignificant that are minor to new source review. In those instances, it is the case that so you do or don't have to report your pre-modification record keeping. You would end up on the application form, and this is not in the record, but this is just from my experience. So on the application form that you fill out for a minor NSR permit, you have to tell them what your emissions are and what you're doing. So then there is reporting of pre-modification records. Right. It's just not pursuant to this rule. Can I ask a follow up question about that? So if the application has that information, the application is submitted to whom? The New Jersey DEP or the New York Department of Environmental Conservation. If it's an in-state source, right? Yes. Then if it's an out-of-state source, if you're downwind from an out-of-state source, how does the downwind jurisdiction? So there's a public notice and comment process under minor NSR, so they would have to look at the New York DEC's public notices, which are on its website or, you know, everything's changed between print, paper, newspaper, but there is a public notice process. It's on the DEC's website, Pennsylvania, the same thing. And I will say that the states that blow towards New Jersey have some of the most extensive minor NSR programs in the country. And I know they cited, you know, something in Kansas, but Kansas doesn't blow to them. And I could quibble with how they describe that, but the states that they're dealing with, to the extent you ask the standing question, it's just makes their claim entirely speculative. Yeah. Well, even if Kansas is not a significant source, Kansas is a significant state. I'll just say that as somebody from Kansas, but I've been to Wichita. If my colleagues don't have any further questions for you, we will hear from Ms. Morelli on her rebuttal. Thank you, Ms. Brim. Thank you. Ms. Morelli, we'll give you three minutes for your rebuttal, but Judge Walker. Could you start with the argument that both of your opposing counsels made that you will be easily distracted by too much information? Not at all. Because, you know, the permitting authorities, they know what they're doing. They process lots of applications. They can look at an application and the admission calculations that are done and evaluate for themselves. Do we think this is going to be problematic or not? And that's their job. But they need that information to be able to do that analysis. But in terms of overburdening them, no, they would like to have the information so they can at least have some sort of check. And, you know, and it may be that post-project admissions raise the concern and then they can go back and look at what was submitted beforehand and determine, wow, is this really out based or, you know, what's going on here? But a couple things I wanted to address really quickly on the burden. Yeah, perfection may not be required, but the ability to enforce certainly is required. And as far as the burden, EPA itself, when they promulgated the final rule, acknowledged that requiring sources to keep records, the admission calculation records, they're already required to perform. And I want to make that point because that's important. They're already required to do the calculation. So EPA itself said requiring them to keep those records is a minimal additional burden. Our position is likewise, you know, requiring sources to report those admission calculations is a nominal burden. They have to email it to the permitting authorities. So not a great burden. The second thing I wanted to address was this issue of minor new source review, which I think is really a red herring. So minor new source review, major NSR applies to major sources, which there's a defined list for sources who emit or have the potential to emit 100 tons or more of NSR pollutant, or there's a catch all category for sources that emit or have the potential to emit 250 tons per year of a pollutant, a regulated pollutant. So if those major sources do not think that they're going to, a project they are proposing, which will increase emissions, but they don't believe it will increase emissions enough to trigger NSR, then yes, they apply for a minor NSR permit or permit modification. But unless they are projecting that the project will lead to increased emissions that could result in It's not a case by case review. It's done on a programmatic basis. You have permits by rules. You have general permits. I mean, the authorities don't have time to review each and every minor new source permit application in depth. They are not required to submit the pre project emission calculations that they are under major NSR and sources and states, excuse me, that only adopt the federal rules are clearly not required to submit the pre-emission calculations. Ms. Morelli, I'm confused between two things you just said. Maybe you meant them both. But one thing you seem to say is for a minor modification, the state authorities that would grant a permit for that minor modification don't have time to thoroughly review the reporting that is done by the facility. And then I also heard you just say the reporting that's done by this facility is not really much reporting at all. Did you mean just the first thing or did you mean both of them? I didn't mean to say it's not that they don't have the time. It's that there's a lot of minor applications, as opposed to major applications. But the thing is, and that's one of the reasons why for minor applications, they require less information. Generally speaking, they don't require the in-depth information that you would submit with a major modification application. So it's a much less rigorous process. Less information is provided. It's not that the permitting authorities don't review the information that is provided. I guess that if a unit makes a minor modification, does the unit report, does the facility report the pre-modification emissions? I believe they do. To me, that seems like the ballgame. Well, I would disagree because what they're required to do is not just report, again, what they're emitting now. They have to, under major NSR, report what they project future emissions will be, which can entail, you know, they can consider a lot of factors. Ms. Morelli, you were telling us earlier that the thing that you really need is you need reporting of pre-modification emissions. The post-modification stuff, you can get that when you need it. If I stated that, sorry, I didn't, let me clarify. What we need are the pre-project emission calculations that project future emissions following the project. Those are the critical things, you know, the critical information that we need, permitting authorities need to evaluate NSR compliance. Thank you. That's why colleagues have further questions. Thank you, counsel. Thank you to all counsel for your arguments this morning. We'll take this case under submission.
judges: Srinivasan, Rogers, Walker